AO 106 (Rev. 06/09)   Application for a Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

FEB 22 2013

Phil Lombardi, Clerk
U.S. DISTRICT COURT

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

MULTIPLE CELLULAR TELEPHONES, I-PAD, GPS
AS DESCRIBED IN ATTACHMENT "A"

)
)
)
)
)
)

Case No. 13-MJ-50-PJC

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A": MULTIPLE CELLULAR TELEPHONES, I-PAD, GPS AS DESCRIBED IN ATTACHMENT "A"

located in the Northern District of Oklahoma , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession With Intent to Distribute Controlled Substances |

The application is based on these facts:

**See Affidavit of Brian Comfort, attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brian Comfort, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/22/2013

City and state:  Tulsa, OK

*Judge's signature*

U.S. Magistrate Paul J. Cleary
*Printed name and title*

## ATTACHMENT "A"

One black Samsung Galaxy S cell phone

> MODEL: SGH-1897
> FCC ID: A3LSGH1897
> SERIAL #: R1YZC51850R
> IMEI: 351863046886509

One silver and gray Verizon Palm Treo 700p cell phone

> FCC ID: 08F93001
> ESN HEX: 36390315
> ESN DEC: 05403736341

One black and silver T-Mobile Alcatel cell phone

> MODEL: OT-606A
> FCC ID: RAD136HACM3
> IMEI: 012908007319478

One white Samsung cell phone

> Model: SGH-T999
> FCC ID: A3LSGHT999
> SERIAL #: R21C70SCYEA
> IMEI: 353022/05/204951/4

One black T-Mobile HTC cell phone

> IMEI: 354004043053523
> SERIAL #: HT0C9RY01078
> FCC ID: NM8PD29110

One black and silver T-Mobile Alcatel cell phone

> Model: OT-606A
> FCC ID: RAD136HACM3
> IMEI: 012908005611512

1

One maroon T-Mobile Samsung cell phone

> MODEL: SGH-T649
> FCC ID: A3LSGHT469
> IMEI: 354418/03/075848/2
> SERIAL #: RQ7SA35783N

One black T-Mobile Samsung cell phone

> MODEL:  SGH-T359
> FCC ID: A3LSGHT359
> IMEI: 352423/04/007805/5
> SERIAL #: RP4B88494P

One black and gray AT & T Samsung cell phone

> MODEL: SGH-A927
> FCC ID: A3LSGHA927
> IMEI: 353602049467687
> SERIAL #: R21C53DMDLV

One black and silver 16GB Apple i-phone

One black and silver 4GB Emerson smart phone

One black T-Mobile Samsung cell phone

> MODEL: SGH-T959V
> FCC ID: A3LSGHT959V
> IMEI: 357982042531127
> SERIAL #: RPB975022T

One maroon Nokia cell phone

> MODEL: 1661-2B
> FCC ID: QTLRH-121
> IMEI: 012490000153188

One black Nexus I-pad

One black TomTom GPS

2

## ATTACHMENT "B"

1.      Computer hard drives, and data, information stored on computers, electronic files, disks and software pertaining to this investigation. Computer items are to include:

(a) Computer hardware consisting of all equipment which can collect, analyze, create, display, convert,, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes, but is not limited to:

(i) Internal storage devices such as fixed disks, smart cards, and external hard disks

(ii) Related communications devices such as, modems, cables, and connections; as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locks, and the contents thereof.

(b) Computer software that includes digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form, including programs to run operating systems and applications such as:

(i) Word-processing programs

(ii) Graphics programs

(iii) Spreadsheet programs

(i) Utilities

(ii) Compilers

1

(iii) Interpreters

(vii) Communications programs

(viii) Specialized accounting, business, or inventory programs

(c) Computer-related documentation of electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

(d) Computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices consist of hardware, software, or other programming code. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

2. Although the process of seizing computers and "imaging" captures all computer data, the stored electronic data will be analyzed to determine which particular files are evidence and authorized to be seized by this warrant.

3. The government shall make an exact copy of all data and other electronically stored information form the seized data storage devices within 10 business days after the warrant is executed. Upon written request by the owner of the seized data storage devices, the government shall provide the owner with a copy of any requested data and

2

electronically stored information that does not constitute contraband or instrumentalities of a crime. The government shall provide such copy to the owner within a reasonable time after a written request is made. If the government withholds any data or electronically stored information requested by the owner, the government shall identify the data and information withheld and explain why it was not produced. The government and the owner shall negotiate the procedures for providing copies of data and electronically-stored information, which may require the owner to provide blank storage media at his or her expense.

(a) The term "data storage devices" means computer hard drives, diskette, CD-ROMs and other devices that contain data and electronically stored information seized pursuant to the search warrant.

(b) The reasonable time period for providing the owner with a copy of data and electronically stored information includes the time required for the government to analyze the data and information to determine whether they contain contraband or instrumentalities of a crime. Although the court has not set a specific time period for such production, the government shall provide the owner with a copy of the data and electronically stored information requested as soon as practicable under the existing circumstances.

3

(c) At the conclusion of the criminal investigation and any related criminal proceedings, the government shall return the seized data storage devices, and any data and information contained thereon, to the owner, except for any data storage devices, data, and information which are contraband or instrumentalities of the crime or which are subject to forfeiture under federal or state law.

4.      The following items could be located in any of the computer or electronic formats described above:

(a) Books, records, papers, receipts, documents, notations, diaries, journals, or ledgers showing receipt, storage, or account receivable information and other criminal activities described in paragraph one above, and notes of computer passwords, codes, or any other security information or device, in whatever media found.

(b) Books, records, papers, receipts, documents, notations, diaries, journals, or ledgers showing receipt, expenditure, or availability of substantial amounts of currency, cash, or money.

(c) Bank statements, account information in regard to, money market accounts, savings accounts, checking accounts, retirement accounts, lockbox accounts, as well as institutional safety deposit box rental paperwork, deposit slips, deposit ticket items, withdrawal slip concealed checks for any and all bank accounts, including certificates of deposit and money market accounts.

(d) Credit card receipts, credit card statements, and charge account information.

4

(e) Digital photographs depicting assets, illegal behavior, travel, and/or expenditures.

(f) Proof of residence, proof of storage unit use, and/or rentals, additional properties owned, or documents reflecting real estate transactions and associated documents, rental agreements or documents, as well as motor vehicle and aviation sales, lease or purchase or financing documents.

(g) Documents purporting to indicate income or salaries received reflecting employment, hours worked, wages earned, withholdings, payroll tax deposits, W-2 and W-4 forms (blank or executed), state and federal tax returns or documents pertaining to the preparation.

(h) Financial statements, loan applications, and promissory notes.

5.     Stored numbers
       Stored messages
       Text messages
       Photographs
       Dialed calls
       Received calls
       Contacts
       Phone list
       Stored notes
       Stored video
       Stored audio
       Stored email


6.     Stored GPS data, routes location and times.

**AFFIDAVIT**

Affiant, Brian L. Comfort, being duly sworn, deposes and states:

1.     I am employed by the Tulsa Police Department.  I have been employed by the Tulsa Police Department for approximately 26 years.  I am currently assigned to the Special Investigations Division.  I have been assigned to this division for approximately 13 years.  The focus of this unit is the enforcement of Oklahoma state narcotics violations.  In February of 2008, I was assigned to the DEA Tulsa Resident Office as a task force officer.  The focus of this unit is the enforcement of federal narcotics violations, with an emphasis on large scale organizations and conspiracies.  I have received extensive training through the state of Oklahoma and the Drug Enforcement Administration in drug recognition, detection, methods of concealment, technologies used by drug trafficking organizations (DTO), and am empowered to make arrests and seizures relating to those violations.

2.     Through training and personal experience, I am aware that drug trafficking organizations maintain extensive contact with customers, couriers and suppliers.  It is essential that organized drug trafficking organizations maintain contact with one another to effectively operate their organization.  Organization members use many different means of communication to maintain contact with each other.  Cell phones and computers are often used by members to maintain contact with sources of supply as well as drug distributors.  Additionally, I am aware that cellular and digital phones are often equipped in such a way so as to store, photos, messages, and notes along with call records showing recently dialed calls, calls received, stored numbers, and stored text messages.  I

1

am aware that often these phones have contact lists including names and numbers. Further that the stored material can be accessed via manipulation of the phone.

3.      GPS units are used by those drug traffickers who transport narcotics for the DTO. These units will store the routes that the traffickers used, where the trafficker originated the trip, and where the trafficker ended his trip while transporting loads of narcotics. These GPS units will also list addresses where narcotic traffickers have been, including stash houses for the storing of narcotics for the DTO.

4.      In November of 2012, I received information from a confidential source (CS) in reference to a subject selling large amounts of cocaine in the Tulsa area.  The CS gave your affiant further information that the loads of cocaine come to Tulsa in a Chevy Malibu with a trap (false compartment) contained in the vehicle.  During further investigation by your affiant and Tulsa Police Officer Corbin Collins, two residences and two vehicles were identified with the DTO.  Officer Collins applied for and was granted state search warrants for 857 N. St. Louis Avenue, 2711 E. King Street, a black Porsche, and a red Nissan truck.

5.      On December 13, 2012 investigators with the DEA, and Tulsa Police Department executed state search warrants at 2711 E. King Street and 857 N. St. Louis Avenue. Prior to executing the search warrants, surveillance was conducted.   Officers observed Ezequiel Perez arrive at 857 N. St. Louis Avenue in a tan Ford Focus at approximately 1430 hours.

2

6.      At approximately 1600 hours, the red Nissan truck investigators had a search warrant for arrived at the residence. It was driven by Ramiro Aguayo. A surveillance officer observed Aguayo go to the front of the residence. Approximately 15 minutes later, Perez and Aguayo got in the Nissan truck. Perez was the driver, and Aguayo the passenger. Perez drove directly to 2711 E. King Street. Both occupants went into the residence.

7.      During the time that Perez and Aguayo were at 2711 E. King Street, a surveillance officer maintained surveillance on the residence. For the next hour and forty five minutes, your affiant called a CS that was in contact with Perez and a subject, later identified as Jose Hurtado that was driving a load of cocaine and methamphetamine to Tulsa. The CS talked to both Perez and Hurtado. At approximately 1730 hours, the surveillance officer at 2711 E. King Street observed a Chevy Malibu arrive at 2711 E. King Street. Shortly after the Malibu arrived, the CS called your affiant and stated that Perez had called him and told him that the cocaine and methamphetamine were in Tulsa.

8.      At approximately 1745 hours investigators from the DEA and Tulsa Police Department executed a search warrant at 2711 E. King Street. Investigators discovered Ezequiel Perez in the kitchen. Investigators found Ramiro Aguayo and Jose Hurtado in the northeast bedroom. Investigators made several announcements, over the course of 5 minutes, calling the subjects into the living room. Eventually all three subjects came into the living room and were placed into custody. Investigators also found Sindi Batres in the living room. Investigators recovered large amounts of cocaine throughout the residence. The amounts were discovered in the kitchen, living room, and northeast

3

bedroom.  The total amount of cocaine was approximately 1.5 kilograms of cocaine and approximately 1 pound of methamphetamine.  Investigators also recovered 2 firearms in the residence (kitchen and hallway closet).

9.      Investigators recovered eight (8) cell phones from the end table in the northeast bedroom, one (1) cell phone from the Chevy Malibu, one (1) GPS unit from the Chevy Malibu, three (3) cell phones in the possession of Jose Hurtado, one (1) cell phone on the entertainment center, and one (1) I-pad on the coffee table in the living room.

10.     The Malibu had a secret compartment (trap) that was discovered by investigators. The trap was accessed from the back deck behind the back seats.

11.     On January 10, 2013, investigators interviewed Sindi Batres, the girlfriend of Jose Hurtado.   Batres stated that she accompanied Hurtado to 2711 E. King Street on December 13, 2012.  They drove to 2711 E. King Street from Oklahoma City.  During the drive to Tulsa, Batres overheard Hurtado talking to Perez about selling someone a kilo of cocaine.  She also overheard that the transaction would take place at 2711 E. King Street.  Batres had been to 2711 E. King Street with Hurtado the Sunday before the arrests.  She observed Hurtado make a cocaine transaction with another subject.

12.     Based on the foregoing, the affiant believes that there is probable cause to believe that contained within the storage or memory of the cell phones identified in Attachment "A" are data and records regarding narcotic trafficking activity.  Specifically, it is believed that the phones and I-pad have names and phone numbers of drug suppliers, customers, couriers and other known and unknown members of the narcotic organization. It is further believed that the phone and I-pad may contain electronic notes or messages

4

that are relevant to the investigation of Ezequiel Perez, Jose Hurtado, Ramiro Aguayo, and others.  There is further probable cause to believe that contained within the GPS unit are addresses that the DTO uses to store and sell narcotics.  These items are more fully set forth in Attachment "B".


Brian Comfort
Task Force Officer
Tulsa Police Department


Subscribed and sworn to before me this 22nd day of February 2013, at Tulsa, Oklahoma.


Paul J. Cleary
United States Magistrate Judge